UNITED STATES DISTRICT COURT

DISTRICT OF OREGON


MIKHAIL LEONTIY,

          Petitioner,

    v.

MARK NOOTH, Superintendent,
Snake River Correctional Institution,

          Respondent.
_____

Case No. 2:16-cv-01390-MC

OPINION AND ORDER

MCSHANE, District Judge:

       Petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging

the deprivation of his constitutional right to counsel during trial. Respondent argues that

petitioner's claim is procedurally defaulted and otherwise lacks merits. For the reasons explained

below, the petition is denied.

<u>BACKGROUND</u>

       On the evening of November 8, 2009, as petitioner was driving approximately forty miles

per hour, he crashed into a vehicle stopped at a red light. Resp't Ex. 111 at 11-12. Petitioner then

backed up, pulled away, and drove away from the scene. *Id.* at 12. The driver of the struck vehicle and a motorist who witnessed the accident followed petitioner to a nearby parking lot, and the witness stopped petitioner as he exited his vehicle and attempted to walk away. *Id.* Petitioner had difficulty walking and appeared intoxicated, with bloodshot, watery, and glassy eyes, slurred speech, and a strong odor of alcohol on his breath. *Id.* Sheriff's deputies arrived shortly after the collision and placed petitioner under arrest. *Id.* at 13.

Petitioner was indicted on felony charges of Driving Under the Influence of Intoxicants (DUII) and two counts of Assault in the Third Degree, along with several other charges. Resp't Ex. 103. Petitioner was appointed counsel and detained pending trial.

Several times prior to trial, petitioner's trial counsel moved to withdraw from the case. Initially, on January 25, 2010, trial counsel did so at petitioner's request, because petitioner believed that counsel was not sharing discovery information with him. Resp't Ex. 105 at 7-8. Trial counsel disputed petitioner's allegations and explained that he had provided discovery and hired two different interpreters to read the discovery information to petitioner. *Id.* at 8, 14-15. The trial court noted that petitioner's dissatisfaction with counsel was not based on any deficiency of counsel but rather on an unrealistic view of the case and inaccurate "advice" from a layperson who was assisting petitioner with pro se motions. *Id* at 8-17. The trial court denied the motion and told petitioner, "You haven't said a single thing that would justify my giving you a new lawyer. So I'm not going to give you a new lawyer. So here is what you have to understand: You are not getting a new lawyer." *Id.* at 15.

On February 19, 2010, counsel again informed the trial court that petitioner refused to speak with his or provide information necessary to prepare a defense. Resp't Ex. 106 at 10-11. Petitioner admitted that he had refused to work with counsel, and the court again admonished

petitioner that he must work with his current attorney to resolve his case – either through a plea or trial – because he would not be getting a new attorney. *Id.* at 11, 19-24.

On May 5, 2010, the court held another hearing on the subject of petitioner's representation. Petitioner admitted that he could not identify any deficiency by counsel but instead complained that "he hasn't done anything for me at this time that has helped." Resp't Ex. 108 at 23. Trial counsel informed the court that petitioner had been making somewhat veiled threats against him, with the threats becoming more explicit. *Id.* 26. In response, the trial court engaged in a lengthy colloquy with petitioner and informed petitioner that if he refused to cooperate with counsel and continued to make threats against counsel, the court would interpret such conduct "as an indication that you do not want a court-appointed attorney." *Id.* at 29.

On May 18, 2010, counsel again moved to withdraw, explaining that petitioner "now makes more pointed threats and indicates that he has associates who will do the harm even if he is incarcerated." Resp't Ex. 125 at 4. After a lengthy colloquy with petitioner, the trial court granted counsel's motion to withdraw and told petitioner that he would not appoint another attorney because petitioner "threatened the lawyer that the Court has provided." Resp't Ex. 109 at 19. The court also told petitioner, "I have given you fair warning that that is exactly how I would interpret the conduct; that is, that you wanted to represent yourself." *Id.*

Petitioner represented himself at trial. The State called as witnesses the responding deputies, the driver and passenger of the other vehicle, and the motorist who followed petitioner after the collision. Resp't Ex. 110 at 30-93. The jury convicted petitioner on all charges. *Id.* at 149-53. The trial court imposed a sentence of 30 months for the DUII conviction, consecutive 45-month sentences for each assault conviction, and concurrent sentences for the remaining convictions, for a total of 120 months of incarceration. *Id.* at 160-62.

Petitioner filed a direct appeal on grounds he did not knowingly waive his right to counsel and was forced to represent himself, among other arguments. Resp't Exs. 111-12. The Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. Resp't Exs. 117-18. Petitioner subsequently filed a petition for post-conviction relief (PCR), alleging ineffective assistance of both trial and appellate counsel. Resp't Ex. 120.

The PCR rejected petitioner's claim against trial counsel and granted relief on his claim against appellate counsel; petitioner was resentenced accordingly. Resp't Exs. 133-34. Petitioner appealed the PCR court's rejection of his trial counsel claim, and the Oregon Court of Appeals affirmed without opinion and the Oregon Supreme Court denied review. Resp't Exs. 137-38.

On July 8, 2016, petitioner filed this habeas petition under 28 U.S.C. § 2254.

## DISCUSSION

In Ground One, petitioner claims that he "repeatedly requested appointment of counsel" at trial and "was repeatedly denied counsel." Pet. at 6 (ECF No. 1).[1] In his supporting brief, petitioner argues:

> There was never any legitimate effort undertaken to determine the nature of the problems between Mr. Leontiy and his counsel, or to consider whether some alternate counsel should be brought in to address the problem.
>
> As the trial court failed to undertake any confidential, appropriate inquiry into the issues between Mr. Leontiy and his counsel, those issues festered, and ultimately led to counsel contending that he had to withdraw because he believed Mr. Leontiy was threatening him. Mr. Leontiy was then required to represent himself at his trial.

---

[1] Respondent maintains that Ground One should be construed as a claim of ineffective assistance of counsel, because petitioner identified it as such. Pet. at 6. However, the substance of Ground One alleges the repeated deprivation of counsel, which clearly implies the trial court's decision. Accordingly, I construe Ground One as alleging trial court error.

In Ground Two, petitioner claims that his appellate attorney "failed to raise the trial court's sentencing error as plain error on appeal." Pet. at 6. However, the PCR court granted relief on this claim, and it is moot. Resp't Ex. 134. Further, petitioner presents no argument to support Ground Two. *See* Pet'r Br. (ECF No. 28).

> In short, the trial court completely failed to conduct an appropriate inquiry into the issues between Mr. Leontiy and his counsel, failed to handle the numerous requests by counsel to withdraw adequately, and eventually forced Mr. Leontiy to represent himself. Mr. Leontiy never made a knowing, intelligent or valid waiver of his right to counsel as required by the Supreme Court in *Argersinger v. Hamlin*, 407 US 25, 37 (1972) and *Faretta v. California*, 422 US 806, 835-36 (1975).

Pet'r Br. at 13 (ECF No. 28). In other words, petitioner claims that: 1) the trial court failed to conduct an adequate inquiry into the conflicts between petitioner and counsel, and 2) petitioner did not validly waive his right to counsel.

As noted by respondent, petitioner did not raise the first issue on direct appeal or argue that the trial court should have inquired more fully into the conflict between petitioner and counsel to determine whether new counsel was warranted. Rather, petitioner argued that he did not knowingly and voluntarily waive his right to counsel through his conduct and was "forced" to proceed to trial without counsel. Resp't Ex. 111 at 20-32, Ex. 112 at 9. Consequently, petitioner did not fairly present this claim to the Oregon courts. 28 U.S.C. § 2254(b)(1)(A); *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam) (before seeking federal habeas relief, a petitioner must "fairly present" a federal claim to the State's highest court "in order to give the State the opportunity to pass upon and to correct alleged violations of its prisoners' federal rights"). Petitioner can no longer present this claim to Oregon's appellate courts, and it is barred from federal review by procedural default. *See* Or. Rev. Stat. § 138.071(1); *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991).

Regardless, I note that the trial court conducted at least three hearings on the subject of trial counsel's representation, and petitioner was given numerous opportunities to explain why he had a conflict with his appointed attorney. *See generally* Resp't Exs. 105-06, 108-09.[2] The trial

---

[2] As noted above, in January 2010 petitioner complained that trial counsel failed to share discovery. Resp't Ex. 105 at 7-8. However, trial counsel had shared the discovery, had given

court rejected petitioner's assertions, found no legitimate conflict between petitioner and counsel, and provided detailed explanations for his findings. *See Nunley v. Nooth*, 2014 WL 3828385, at *6 (D. Or. Aug. 4, 2014) (rejecting petitioner's claim that the trial court erred in denying substitute counsel, when the petitioner conceded "there was no actual conflict" and cited "no controlling Supreme Court authority requiring that the trial court's inquiry be conducted in private or be more searching").

On direct appeal, petitioner raised the second issue and argued that he did not knowingly or voluntarily waive his right to counsel. Resp't Ex. 111. The Oregon Court of Appeals rejected this claim without opinion and the Oregon Supreme Court denied review. Resp't Exs. 117-18. Respondent maintains that the state court decisions are entitled to deference.

A federal court may not grant a habeas petition regarding any claim "adjudicated on the merits" in state court, unless the state court ruling "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the

---

petitioner two copies, and had the information read to petitioner by two interpreters. *Id.* at 8, 14-15. In February 2010, petitioner also complained that trial counsel conducted an inadequate investigation into petitioner's claim that his "friend" was driving the car at the time of the accident, but petitioner had refused to share the name of his "friend" with trial counsel at that time. Resp't Ex. 106 at 29-30. Additionally, at a hearing on April 8, 2010, counsel explained, "There is allegedly a driver that cannot be located that Mr. Leontiy says was the person driving and not him. We have had hired an investigator to find that person. We have had zero success in that. We have exhausted all leads. We have used Mr. Leontiy's brother in order to try to find that person. We had the interpreter follow all day along with the investigator going various places. We cannot locate that person." Resp't Ex. 107 at 12-13.

The record makes clear that petitioner simply did not like his appointed counsel and refused to work with him, despite the trial court's orders and counsel's repeated efforts to investigate. The fact that petitioner disliked or distrusted counsel did not unequivocally require the appointment of new counsel. *See, e.g.*, *Morris v. Slappy*, 461 U.S. 1, 14 (1983) (explicitly rejecting "the claim that the Sixth Amendment guarantees a "meaningful relationship" between an accused and his counsel"); *Plumlee v. Masto*, 512 F.3d 1204, 1211 (9th Cir. 2008) (en banc) (finding no Sixth Amendment violation "when a defendant is represented by a lawyer free of actual conflicts of interest, but with whom the defendant refuses to cooperate because of dislike or distrust").

United States." 28 U.S.C. § 2254(d)(1). A state court decision is "contrary to" established federal law if it fails to apply the correct Supreme Court authority, or if it reaches a different result in a case with facts "materially indistinguishable" from relevant Supreme Court precedent. *Brown v. Payton*, 544 U.S. 133, 141 (2005); *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A state court decision is an "unreasonable application" of clearly established federal law if the state court identifies the correct legal principle but applies it in an "objectively unreasonable manner." *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) (per curiam); *Williams,* 529 U.S. at 407-08, 413; *see also Early v. Packer*, 537 U.S. 3, 11 (2002) (per curiam) (state court decisions that are not "contrary to" Supreme Court law may be set aside "only if they are not merely erroneous, but 'an unreasonable application' of clearly established federal law, or based on 'an unreasonable determination of the facts.'").

Petitioner maintains that he "never made a knowing, intelligent or valid waiver of his right to counsel as required by the Supreme Court in *Argersinger v. Hamlin*, 407 US 25, 37 (1972) and *Faretta v. California*, 422 US 806, 835-36 (1975)." Pet'r Br. at 13. Petitioner presents no further argument to support his assertion of invalid waiver and does not explain why the state court rulings were contrary to or an unreasonable application of clearly established Supreme Court precedent. *Mayes v. Premo*, 766 F.3d 949, 957 (9th Cir. 2014) (a habeas petitioner bears the burden of proving his claims).

The record reflects that petitioner was deemed to have either forfeited or waived his right to counsel after petitioner refused to work with appointed counsel and continued to threaten him, despite the trial court's repeated warnings that petitioner would be forced to represent himself, "with all of the risks that that entails and all of the inevitable failure that is likely to mean."

Resp't Ex. 108 at 29-30, Ex. 109 at 16-17. Petitioner fails to identify any clearly established Supreme Court precedent holding that a defendant's Sixth Amendment right to counsel cannot be waived or forfeited through misconduct. *See Chandler v. Blacketter*, 366 Fed. App'x 830, 831 (9th Cir. Feb. 24, 2010) (stating that the petitioner "has failed to identify – and we cannot find – any Supreme Court case clearly establishing that the right to counsel cannot be forfeited through a defendant's misconduct").

Instead, petitioner cites *Faretta* and argues that any implied waiver was invalid based on the trial court's conduct. Under *Faretta*, a criminal defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta*, 422 U.S. at 835 (citation omitted). Here, the trial court informed petitioner numerous times that: 1) petitioner had not shown a basis for new appointed counsel; 2) petitioner was not going to receive a new attorney by defying the court's orders to cooperate with counsel; and 3) petitioner would be forced to represent himself if he continued either to thwart counsel's efforts or to threaten counsel. *See generally* Resp't Exs. 105, 106, 108. The court made clear that petitioner's repeated conduct toward his current counsel would lead to the waiver or forfeiture of counsel:

> If you don't work with [trial counsel], and if you force [trial counsel] to ask himself to be removed from your case, and if that is because you walk out on him, you tell him not to come back, you make threats, then I'm going to take that as an indication that you do not want a court-appointed attorney. That is how I'm going to take that. And so if that happens, if [trial counsel] comes back with that motion, based on your refusal to work with him and any continued threats you make, I am going to relieve [trial counsel], and you are going to represent yourself, with all of the risk that that entails and all of the inevitable failure that that is likely to mean. Do you understand that?"

Resp't Ex. 108 at 29-30. Petitioner responded that he understood. *Id.* The court further explained that petitioner would be foolish to rely on an unidentified layperson to help him, because that

person "is not going to be sitting next to you at trial questioning the witnesses, presenting your case to the jury, arguing your case to the jury." *Id.* at 30.

Despite the court's clear directive, petitioner again refused to work with trial counsel and continued to threaten counsel with harm, telling him, "I keep telling you to get off my case. You keep coming back. I don't know why you keep coming back…Don't you get it? Are you too stupid to understand what is going to happen to you?" Resp't Ex. 109 at 4-5. After reminding petitioner about their previous discussions and confirming that petitioner understood the consequences of his actions, the trial court allowed counsel to withdraw and informed petitioner he could obtain his own counsel or represent himself. *Id.* at 5-8, 11, 19-20 ("And do you recall that I explained to you how difficult it would be for you to represent yourself, not only because of the language issues…as well as your inexperience and that, because of the risks of trying to represent yourself, that it was very important that you make peace with the idea that Mr. Herron was going to be your attorney…so that you didn't put yourself in the position of having to represent yourself.").

Petitioner does not explain how the trial court's ruling was an unreasonable application of clearly established federal law in these circumstances. *Faretta*, 422 U.S. at 835-36 (finding that "the trial judge had warned Faretta that he thought it was a mistake not to accept the assistance of counsel, and that Faretta would be required to follow all the 'ground rules' of trial procedure"); *see also see United States v. Thomas*, 357 F.3d 357, 363-64 (3d Cir. 2004) (finding that the defendant was not deprived of counsel when the trial court explained the consequences of self-representation and warned defendant that if he continued to engage in misconduct toward counsel, "his misconduct would be interpreted as a waiver of counsel"); *United States v. Oreye*, 263 F.3d 669, 672 (7th Cir. 2001) (explaining that the trial court was placed "on the razor's edge

in assisting a defendant to make an informed choice between representation by counsel with whom the defendant is irrationally dissatisfied and self-representation," and finding no deprivation of counsel where the trial court emphasized the "difficulties" of self-representation and the defendant's unfamiliarity with "trial procedures" and "legal procedures"). Accordingly, petitioner fails to establish that he is entitled to federal habeas relief.

<u>CONCLUSION</u>

The Petition for Writ of Habeas Corpus (ECF No. 1) is DENIED and this case is DISMISSED. A Certificate of Appealability is denied on the basis that petitioner has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).

DATED this 21st day of June, 2018.


s/Michael J. McShane
Michael J. McShane
United States District Judge